## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ELIZABETH A. GLANT *o/b/o G.H.*,

               Plaintiff,

    v.

ANDREW M. SAUL,[1]
Commissioner of Social Security,

             Defendant.

CIVIL ACTION NO. 3:20-CV-01755

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Elizabeth A. Glant brings this action on behalf of her minor daughter ("G.H.") under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Childs' Supplemental Security Income ("SSI") on behalf of G.H. under Title XVI of the Social Security Act.. For the following reasons, the undersigned shall order the Commissioner's decision to be **AFFIRMED.**

## I.   BACKGROUND AND PROCEDURAL HISTORY

On August 28, 2018, Glant filed an application for benefits under Title XVI of the Social Security Act for her minor daughter, G.H., for SSI benefits, alleging an onset date of

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

October 9, 2008. (Doc. 12-2, at 11). Glant's application for benefits was initially denied on January 3, 2019, and Glant filed a timely appeal by way of a Request for Hearing on January 21, 2019, which  Administrative Law Judge ("ALJ") Patrick S. Cutter held on September 25, 2019. ((Doc. 12-2, at 11). In a October 18, 2019, written decision, the ALJ determined that Glant is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 12-2, at 25). On July 30, 2020, the Appeals Council subsequently denied Glant's request for review. (Doc. 12-2, at 2).

On September 25, 2020, Glant commenced the instant action. (Doc. 1).The Commissioner responded on March 23, 2021, providing the requisite transcripts from G.H.'s disability proceedings. (Doc. 11; Doc. 12). The parties then filed their respective briefs, with Glant raising three principal bases for reversal or remand. (Doc. 15; Doc. 16). This matter is ripe for decision.

## II.   STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and the Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  A claimant under the age of 18 ("child") shall be considered disabled for under Title XVI of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. §416.906. Notwithstanding the above, no child who engages in substantial gainful activity, as

defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. §416.906.

The ALJ employs a three-step evaluation process to determine whether a child is eligible for SSI payments because of disability. As part of this analysis, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a medically determinable, severe impairment; (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.924. If the ALJ finds that the child is not disabled at any point in the sequence, review does not proceed further. 20 C.F.R. §§ 416.924.

In determining functional equivalence, the ALJ evaluates the following six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment is functionally equal to a listed impairment when it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A marked limitation is more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2)(ii). An impairment that only meets some of the criteria of a listed impairment, "no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (holding same).

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529

F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).The question before the Court, therefore, is not whether G.H. is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is

plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the court reviews the ALJ's findings to determine whether they were supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.' " *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the decision of the ALJ is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

For effective judicial review to take place, the court "need[s] from the ALJ not only an expression of the evidence s/he [sic] considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

## III.    THE ALJ'S DECISION

The ALJ proceeded through  the three-step sequential evaluation process to determine whether G.H., as an individual under the age of eighteen (18), was disabled. 20 C.F.R. § 416.924(a); (Doc. 12-2, at 11-25). At step one, the ALJ concluded that G.H. has not been engaged in any substantial gainful activity since her application date of August 28, 2018.

- 5 -

(Doc. 12-2, at 14). The ALJ then proceeded to step two and determined that G.H. has the following severe impairments: Autism Spectrum Disorder/Asperger's, Attention-Deficit/Hyperactivity Disorder ("ADHD"), and oppositional defiant disorder. (Doc. 12-2, at 14). Next, at step three, the ALJ determined that G.H. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 in effect on the date the ALJ issued his opinion. (Doc. 12-2, at 15).Specifically, the ALJ considered Listings 112.08 (Oppositional defiant disorder/Personality and impulse control disorders), 112.10 (autism spectrum disorder, and 112.11 (attention-deficit/hyperactivity disorder). (Doc. 12-2, at 15).

In determining step three, the ALJ addressed the six domains of functioning and concluded that G.H. does not have an impairment or impairments that meets or medically equals the severity of one of a listed impairment. (Doc. 12-2, at 15-25). The ALJ concluded that G.H. has: (1) no limitation in acquiring and using information; (2) less than a marked limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in the ability to care for herself; and (6) less than a marked limitation in health and physical well-being. (Doc. 12-2, at 15-25). Based on this analysis, the ALJ concluded G.H. has not been disabled, as defined in the Social Security Act, since August 28, 2018, the date the application was filed. (Doc. 12-2, at 25).).

## IV.   DISCUSSION

Glant raises three issues on appeal. (Doc. 15, at 1-2). First, she contends that the ALJ "erred and abused his discretion by failing to properly consider [G.H.'s] limitations under the Functional Domains, when considering her severe impairments . . .  including her Autism

Spectrum Disorder/Asperger, [ADHD,] and Obsessive Compulsive Disorder ("OCD")". (Doc. 15, at 12). Next, she asserts the ALJ erred in finding G.H.'s other impairments, including her insomnia, OCD, cerebellum cyst with headaches/double-vision, and anxiety not severe, and thereby failing to consider them in his functional domain analysis. (Doc. 15, at 19). Lastly, Glant argues the ALJ erred in relying upon the findings of the State Agency Consultant as opposed to the opinions offered in the teacher questionnaires. (Doc. 15, at 21).). The Court concludes that the ALJ did not err and that substantial evidence supports his decision.

A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION THAT G.H.'S SEVERE IMPAIRMENTS DO NOT FUNCTIONALLY EQUAL A LISTING.

First, Glant argues that "[t]he ALJ erred and abused his discretion by failing to properly consider G.H.'s limitations under the Functional Domains, when considering her severe impairments as identified by the ALJ, including her Autism Spectrum Disorder/Asperger, [ADHD,] and [OCD]." (Doc. 15, at 12). Glant contends the limitations caused by G.H.'s severe impairments are consistent with findings of marked limitations in at least the domains of (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) caring for oneself. (Doc. 15, at 18). However, to the extent Glant asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." *See Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015). For the sake of completeness, the Court will explain why substantial evidence supports the ALJ's findings

that G.H. has no limitation in the functional domain of acquiring and using information and less than marked limitations in attending and completing tasks, interacting and relating to others, and caring for herself. (Doc. 12-2, at 20-24).

   1. **Substantial evidence supports the ALJ's finding that G.H. has no limitation in the functional domain of acquiring and using information.**

First, Glant argues that the ALJ erred in finding that G.H. suffers from no limitation in acquiring and using information. (Doc. 15, at 18). When evaluating a child's limitations in this domain, the ALJ must consider how well the child acquires or learns information, and how well the child uses the information he or she has learned. 20 C.F.R. § 416.926a(g). Some examples of limitations in this domain include: not demonstrating an understanding of words about space, size, or time; an inability to rhyme words or the sounds in words; having difficulty recalling important things that were learned in school the previous day; difficulty in solving mathematics questions; only talking in short, simple sentences; and having difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3)(i)-(v).

Glant argues that G.H. has at least marked limitations in this domain. (Doc. 15, at 18). Glant argues that G.H.'s identified severe impairments of autism spectrum disorder/Asperger's, ADHD, and OCD warrant a finding of a marked limitation in the functional domain of acquiring and using information. (Doc. 15, at 12). However, Glant's brief lacks a specific argument as to which limitations the ALJ failed to reasonably consider for this functional domain and thereby fails to show error. *See Hutcheson v. Berryhill*, No. 3:16-CV-2023, 2017 WL 3581675, at *26  (M.D. Pa. Aug. 18, 2017) (finding that the Plaintiff needed to specify how the ALJ erred in a functional domain analysis). The limitations that Glant mentions that appear related to the domain of acquiring and using information are: (1)

she has trouble remembering to do things; and (2) cannot follow instructions or engage in activities quietly. (Doc. 15, at 15). The ALJ addressed these limitations. The ALJ concluded that: "[G.H.] has no limitation in acquiring and using information. Neither of [her] teacher questionnaires noted any difficulties within the domain; additionally, [she] has obtain[ed] As through Cs in regular education and had an average full scale IQ of 100." (Doc. 12-2, at 20).

The ALJ discussed relevant record evidence directly relating to the applicable functional domain in reaching his determination. (Doc. 12-2, at 20). The ALJ did not rely solely on specific aspects of the medical records, as Glant argues. (Doc. 15, at 15). Instead, the ALJ relied primarily on the questionnaires completed by G.H.'s teachers. (Doc. 15, at 20). On June 7, 2017, Sarah Meassic ("Miss Meassic"), G.H.'s second-grade teacher, completed a questionnaire stating that G.H. had no difficulties in acquiring and using information. (Doc. 12-6, at 5). Miss  further remarked that G.H.  "is on grade level in all subjects [but] does have a harder time in math." (Doc. 12-6, at 11).). Similarly, Jennifer Farmer ("Miss Farmer"), G.H.'s fourth-grade teacher, observed no difficulties in acquiring and using information. (Doc. 12-6, at 90)). The ALJ also considered G.H.'s second grade and fourth grade report cards noting that G.H.  obtained As through Cs  in regular education classes. (Doc. 12-2, at 18; Doc. 12-6, at 24, 126). Finally, the ALJ noted that G.H. scored a 100 full scale IQ placing her in the average range of intelligence. (Doc. 12-2, at 18; Doc. 12-9, at 101). Accordingly, the ALJ cited to substantial evidence indicating no limitations in this area, let alone the requisite "marked" or "extreme" limitations. (Doc. 12-2, at 20).

**2. Substantial Evidence Supports the ALJ's Finding that G.H. Has a Less Than Marked Limitation in the Functional Domain of Attending and Completing Tasks.**

Next, Glant argues that the ALJ erred in finding that G.H. suffers from less than marked limitations in attending and completing tasks. (Doc. 15, at 18). When evaluating a child's ability in this domain, the ALJ must consider how well the child is able to focus and maintain his or her attention, and how well the child begins, carries through, and finishes his or her activities, including the pace at which the child performs activities and the ease in which the child changes between them. 20 C.F.R. § 416.926a(h). Some examples of limitations in this domain include: being overly startled, distracted, or over-reactive to sounds, sights, movements, or touch; being slow to focus on, or failing to complete activities of interest to the child; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including those the child is capable of completing; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i-v).

Glant argues the ALJ only noted some of G.H.'s limitations but that he failed to review the record as a whole. (Doc. 15, at 14-16). However, Glant fails to specify what specific limitations the ALJ did not consider as they pertain to the functional domain of attending and completing tasks. *See Hutcheson*, 2017 WL 3581675, at *26. The limitations that Glant mentions that seem related to the functional domain of attending and completing tasks are: (1) she has trouble remembering to do things; (2) is hyperactive and fidgety; (3) is restless, cannot maintain attention, and talks excessively; (4) cannot follow instructions or engage in activities quietly; (5) is distractable with poor concentration on examination; and (6) will not

- 10 -

complete her homework easily. (Doc. 15, at 14-16). The ALJ addressed these issues in making his determination.

> The ALJ concluded that:
>
> <u>The claimant has less than marked limitation in attending and completing tasks.</u> The claimant has a long history of attention-deficit/hyperactivity disorder treated with medication. Before her medication was increased, the claimant exhibited with distractible attention and poor concentration on exam with Dr. Garg. However, with regular medication, both the claimant's 2nd and 4th grade teachers noted no limitations within this domain.
>
> (Doc. 12-2 at 21).

Miss Meassic and Miss Farmer observed no deficits in this area. (Doc. 12-6, at 6, 91).). G.H. also obtained As through Cs in her second and fourth grade classes, demonstrating adequate focus and complete assignments. (Doc. 12-6, at 24, 126). The ALJ also acknowledged G.H.'s issues with her attention span and noted that G.H. was distracted in the clinical setting on examination by Dr. Garg before her medication was increased. (Doc. 12-2, at 21; Doc. 12-9, at 63-82). However, the ALJ noted that G.H.'s distractibility in a clinical setting did not appear to carry over to her schoolwork, as evidenced by the reports in the teacher questionnaires. (Doc. 12-2, at 21; Doc. 12-6, at 6, 91). Moreover, the ALJ considered records detailing G.H.'s conditions after her medication adjustment that note adequate concentration. (Doc. 12-2, at 21). Accordingly, the ALJ cited substantial evidence supporting a less-than-marked limitation in this area. *See Cortes ex rel. J.C. v. Comm'r of Soc. Sec.*, No. 2:11-CV-5819 WJM, 2013 WL 795599, at *5 (D.N.J. Mar. 4, 2013) (holding that the ALJ's finding of a less than marked limitation in the domain of attending and completing tasks was supported by substantial evidence in part because the claimant's teachers did not report significant limitations in this domain).

**3. Substantial Evidence Supports the ALJ's Finding that G.H. Has a Less Than Marked Limitation in the Functional Domain of Interacting and Relating With Others.**

Third, Glant argues that the ALJ erred in finding that G.H. suffers from less than marked limitation in interacting and relating with others. (Doc. 15, at 18). When evaluating a child's limitations in the area of "interacting and relating with others" an ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his or her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Examples of limitations in this domain include: having no close or age appropriate friends; avoiding or withdrawing from people the child knows; being overly anxious or fearful when meeting new people or trying new experiences; difficulty cooperating with others; having difficulty playing games or sports with rules; and difficulty communicating with others (i.e., difficulty in using appropriate verbal and nonverbal cues when expressing him or herself, carrying on a conversation, or asking others for assistance); and difficulty in speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3)(i)-(vi); SSR 09-5p, 2009 WL 396026 at *6-7.

Glant argues the ALJ failed to address G.H.'s limitations; however, she fails to specify what limitations the ALJ did not consider for the functional domain of interacting and relating with others. *See Hutcheson*, 2017 WL 3581675, at *26. The limitations that Glant mentions that seem related to the function domain of interacting and relating with others are: (1) she has problems getting along with others; (2) has no fears and does not understand why to avoid strangers; (3) does not understand boundaries and avoids eye contact; (4) has limited friends and struggles to maintain friendships; (5) aggression with peers once or twice per month; (6)

moderate oppositional defiance disorder; and (7) has frequent meltdowns at home and school.

(Doc. 15. at 14-16). The ALJ addressed these issues and stated that

> [t]he claimant has less than marked limitation in interacting and relating with others. The claimant has had a history of difficulty with understanding appropriate responses and communicating (Exhibit B10F, B7F). The claimant also a history of being bullied at school (Exhibit B1E, B6E). However, on recent mental status examinations, the claimant was noted to have good eye contact, good mood, and normal speech (Exhibit B8F). The claimant also has testified to having 2 good friends and enjoying spending time with her siblings. The claimant's 4 th grade teacher noted a mix of no to obvious problems within this domain, and this is consistent with the current less than marked limitation (Exhibit B6E). In light of the reported physical aggression and defiance, the undersigned considered greater limitations within this domain. However, there was no indication of suspension or detentions within her school records and her 4th grade teacher note 'no problem' with following rules or obeying adults (Exhibit B6E).

(Doc. 12-2, at 22).

.

The ALJ pointed to the teacher questionnaires in his assessment and addressed the limitations referenced in Glant's brief. Miss Meassic noted no problems in the area of interacting and relating with others while Miss Farmer advised that G.H. had some problems in this area. (Doc. 12-6, at 7, 92). Ms. Farmer noted that G.H. had a slight problem , making and keeping friends, using language appropriate to the situation and listener, introducing and maintain relevant and appropriate topics and conversation, taking turns in a conversation, and using adequate vocabulary and grammar to express thoughts and ideas in everyday conversation and had an obvious problem playing cooperatively with other children, seeking attention appropriately, relating experiences and telling stories, and interpreting facial expressions or sarcasm, but stated that none of the problems were serious. (Doc. 12-6, at 92). The ALJ noted that G.H. has  a history of difficulty with understanding appropriate responses

and communicating and that she has been bullied. (Doc. 12-2, at 22; Doc. 12-9, at 100). However, the ALJ also explained that G.H. was noted to have good eye contact, good mood, and normal speech on recent mental status examinations. (Doc. 12-2, at 22; Doc. 12-9, at 63-78). The ALJ stated that he considered greater limitations in this domain due to G.H.'s reported physical aggression and defiance. (Doc. 12-2, at 22). However, the ALJ reasoned that "there was no indication of suspension or detentions within [G.H.'s] school records and her [fourth] grade teacher note[d] 'no problem' with following rules or obeying adults" reconciled the competing evidence. (Doc. 12-2, at 22). He also explained that Miss Meassic observed G.H. to be age-appropriate in this domain. (Doc. 12-2, at 22; Doc. 12-6, at 7). Accordingly, the ALJ determined a less-than-marked limitation in the functional domain of interacting and relating with others based on substantial evidence.

### 4. Substantial Evidence Supports the ALJ's Finding that G.H. Has a Less Than Marked Limitation in the Functional Domain of Caring for Oneself.

Finally,, Glant argues that the ALJ erred in finding that G.H. suffers from less than marked limitations in the ability to care for herself. (Doc. 15, at 18). The regulations on the domain of caring for yourself explain the evaluation criteria, in pertinent part, as follows:

> In this domain, we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.

> School-age children (age 6 to attainment of age 12). You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate

consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. §§ 416.926a(k); (k)(2)(iv).

Glant argues that the ALJ failed to address G.H.'s limitations; however, she fails to specify what limitations the ALJ did not consider specifically for the function domain of caring for oneself. *See Hutcheson*, 2017 WL 3581675, at *26. The limitations that Glant mentions that seem related to the functional domain of caring for oneself are: (1) frequent meltdowns at home and school; (2) engaging in self-injurious and risky behaviors which cause her to hurt herself; (3) poor sleep; (4) panic attacks twice per day; and (5) aggression with peers once or twice per month. (Doc. 15, at 14-16). The ALJ addressed these limitations and concluded that

> [t]he claimant has less than marked limitation in the ability to care for herself. The claimant's mother reported several tantrums or meltdowns each day (Hearing Testimony). The claimant has long-term reported difficulty with falling and staying asleep. The claimant also has independent and age appropriate ability to perform activities of daily living. There was no indication of angry outbursts by any medical providers, nor was this allegation supported by academic records. While the claimant's teacher noted a 'serious problem' with the claimant' patience and frustration (Exhibit B6E), the claimant's other abilities within this domain, including the claimant's ability to quickly calm herself down when she does get upset, supports a less than marked limitation within this domain.

(Doc. 12-2, at 23-24).

The ALJ recognized that Glant "reported several tantrums or meltdowns [by G.H.] each day".. (Doc. 12-2, at 24). He also acknowledged that Miss Farmer reported some "serious problems" with frustration and  patience. (Doc. 12-2, at 24).). In her evaluation, Miss Farmer noted that G.H. had a serious problem handling frustration appropriately and being patient

- 15 -

when necessary, an obvious problem using appropriate coping skills to meet daily demands of the school environment, and a slight problem taking care of her personal hygiene and responding appropriately to change in her mood. (Doc. 12-6, at 94). However, Miss Farmer also noted that G.H. "has wonderful coping behaviors as she goes through a lot of stress daily." (Doc. 12-6, at 94). Additionally, Miss Meassic reported no problems in G.H.'s ability to care for herself. (Doc. 12-6, at 9). The ALJ noted that these statements along with G.H.'s independence, ability to perform activities of daily living, ability to calm herself down when she gets upset, lack of indication of angry outbursts by any medical providers, or evidence in her academic records all supported a less than marked limitation in this area. (Doc. 12-2, at 24).

The ALJ compared the evidence supporting a finding of some limitation with the countervailing evidence. (Doc. 12-2, at 24). The ALJ did not fail to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. The ALJ also adequately explained his decision, because he gave "not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705. Thus, substantial evidence supports the ALJ's finding of a less-than-marked limitation in the domain of caring for oneself.

B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION THAT G.H.'S OTHER IMPAIRMENTS DID NOT FUNCTIONALLY EQUAL A LISTING.

Glant asserts that "[t]he ALJ erred and abused his discretion by failing to consider [G.H.'s] limitations under the Functional Domains, when considering other impairments,

- 16 -

including her insomnia, [OCD], cerebellum cyst with headaches/double-vision[,] and anxiety" as these limitations are severe and were not considered in the functional domain analysis. (Doc. 15, at 19). An impairment is not considered severe if it "is a slight abnormality or a combination of abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 924(c).

Glant asserts that G.H.'s insomnia, OCD, cerebellum cyst with headaches/double-vision and anxiety, which the Milton S. Hershey Medical Center diagnosed initially, and upon evaluation, resulted in a diagnosis of Autism/Asperger's Syndrome, were also confirmed by Glant's testimony. (Doc. 15, at 20). These conditions, according to Glant, "clearly have more than a slight impact on [G.H.'s] ability to function, and should have been considered" by the ALJ. (Doc. 15, at 20).

The ALJ noted that G.H.

[G.H.] testified that she still has daily headaches and occasional crossed or double vision. [G.H.'s] brain MRI found a small arachnoid cyst in March 2012, and an unchanged cyst with otherwise unremarkable brain MRI in June 2014 (Exhibit B6F). [G.H.] had no further treatment for this condition. There was no indication that [G.H.] reported vision difficulties or headaches to [any] of her pediatricians from 2017 to 2019 (Exhibit B1F, B9F). [G.H.'s] last treatment for headaches was in 2014. (Exhibit B6F). The claimant's mother testified that the claimant headaches had stopped and then returned a month prior to the hearing. The claimant had surgery on both eyes in February 2016 as treatment for her poorly controlled intermittent exotropia (Exhibit B6F). By January 2017, the claimant had normal hearing and bilateral 20/25 visual acuity without corrective lens (Exhibit B1F). There was no evidence that the claimant received or required ongoing treatment for these conditions or that these conditions resulted in any severe functional limitations that are not currently controlled by medication, lasting a required 12-months. Accordingly, the undersigned finds that these conditions are not "severe" impairments within the meaning of the regulations.

(Doc. 12-2, at 14).

The ALJ found that these symptoms were not severe as they did not cause "more than minimal functional limitations." 20 C.F.R. § 924(c). The ALJ considered G.H.'s above symptoms in his functional domain analysis. (Doc. 12-2, at 16-18) . For example, the ALJ considered G.H.'s insomnia and recognized that she has trouble sleeping. (Doc. 12-2, at 16). The ALJ noted that G.H.'s mother reported normal sleep patterns in January 2017, but poor sleep and anxiety in October 2018. (12-2, at 17-18; Doc. 12-7, at 5; Doc. 12-9, at 16). However, the ALJ also noted that in December 2018 and March 2019 "there was no indication [G.H.] reported difficulties with sleep . . . to her pediatrician." (Doc. 12-2, at 18; Doc. 12-9, at 89-98). The ALJ also cited instances in which the teacher questionnaires indicated that G.H.'s impairments were not causing significant limitations at school. (Doc. 12-2, at 20-25). For instance, despite G.H.'s OCD, her teachers recorded no limitations in the domains of acquiring and using information or attending and completing tasks. (Doc. 12-2, at 20-21; Doc. 12-6, at 5-6, 90-91 ).

Substantial evidence supports the ALJ's determination that G.H.'s cerebellum cyst is not severe. The ALJ discussed that a small arachnoid cyst was found on G.H.'s brain in March 2012 and an unchanged cyst with an otherwise unremarkable MRI was taken in June 2014. (Doc. 12-2, at 14; Doc. 12-8, at 13-14, 27, 42). The ALJ also noted that G.H. had not received any further treatment for her cyst condition and had not received treatment for headaches since 2014 and that G.H. and Glant testified that "[G.H.'s] headaches had stopped and then returned a month prior to the hearing.". (Doc 12-2, at 14).

The ALJ also discussed G.H.'s vision problems. The ALJ noted that G.H. had surgery on both eyes in February 2016 to treat her poorly controlled intermittent exotropia and had normal hearing and bilateral 20/25 visual activity without corrective lenses. (Doc 12-2, at 14;

Doc. 12-8, at 46, 53-60). The ALJ thus concluded that, "[t]here was no evidence that [G.H.] received or required ongoing treatment for these conditions or that these conditions resulted in any severe functional limitations that are not currently controlled by medication, lasting a required 12-months." (Doc 12-2, at 14).

In essence, Glant argues the ALJ should have lent more credence to her preferred pieces of evidence, most notably her own testimony. (Doc. 15, at 20). However, it is not the role of the Court to substitute its judgment for that of the ALJ. *See* Social Security Act, § 205(g), 42 U.S.C.A. § 405(g). The standard here is substantial evidence, which is deferential to the judgment of the ALJ. *Rutherford*, 399 F.3d at552. The ALJ's duty is to weigh the evidence and resolve conflicts. *See Richardson*, 402 U.S. at 410 (clarifying that when the record contains conflicting medical evidence, the ALJ must weigh that evidence and resolve the conflict); *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted) (explaining that an ALJ may weigh credibility of the evidence).

The Court finds that substantial evidence supports the ALJ's findings regarding the severity of G.H.'s impairments. The ALJ relied primarily on evidence in the record to determine the severity of G.H.'s symptoms and discussed such evidence thoroughly when reaching his conclusion. Accordingly, substantial evidence supports the ALJ's finding that G.H.'s other symptoms were not severe in that they caused no more than minimal functional limitations. 20 C.F.R. § 924(c).

C. Substantial evidence supports the ALJ's use of the teacher questionnaires.

Glant contends that "[t]he ALJ erred and abused his discretion by relying upon the findings of the State Agency Consultant, who never examined [G.H.], and offered opinions

without most of the medical evidence submitted in this matter, as opposed to the" opinions provided in the teacher questionnaires. (Doc. 15, at 21). In other words, Glant argues that the ALJ afforded too much weight to the State Agency Consultants and not the Teacher Questionnaires, stating that "the ALJ did not appear to base any of his findings regarding Claimant's limitations under the domains on the multiple Teacher Questionnaires . . . ." (Doc. 15, at 24).

On the contrary, the ALJ relied heavily on the teacher questionnaires in his functional domain analysis and found them "generally persuasive." (Doc. 12-2, at 18, 20-24). Glant argues that "[t]he ALJ did not appear to base any of his findings regarding [G.H.'s] limitations" found by Miss Farmer regarding daily and obvious issues with interacting with others and caring for herself pertaining to her coping behaviors. (Doc. 15, at 24). The ALJ stated  that Miss Farmer "noted a mix of no to obvious problems within [the interacting and relating with others] domain . . . consistent with the . . . less than marked limitation" and found that Miss Farmers note that G.H. had "'no problem' with following rules or obeying adults demonstrated a less than marked limitation in this domain as well. (Doc. 12-2, at 22; Doc. 12-6, at 92). Additionally, the ALJ discussed Miss Farmers teacher questionnaire regarding G.H.'s ability to care for herself. (Doc. 12-2, at 24). The ALJ explained that while Miss Farmer "noted a 'serious problem' with [G.H.'s] patience and frustration . . . , [G.H.'s] other abilities within this domain, including [her] ability to quickly calm herself down when she does get upset, supports a less than marked limitation within this domain." (Doc. 12-2, at 24).   ). The ALJ thoroughly discussed the teacher questionnaires and cited them in his functional domain analysis. (Doc. 12-2, at 18, 20-24); *see supra*. As discussed *supra*, the ALJ's reliance on the teacher questionnaires is supported by substantial evidence. (Doc. 12-2, at 18,

20-24; 12-6, at 4-11, 90-96). The ALJ clearly utilized the teacher questionaries in his opinion and the court may not reweigh the evidence in its determination. *See* Burns, 312 F.3d at 118. As such, substantial evidence supports the ALJ's use of the teacher questionaries and reliance on the state agency consultant reports, as he utilized a wide array of evidence in his analysis.

## V.   CONCLUSION

Based on the foregoing, the decision of the Commissioner is **AFFIRMED**, and final judgment will be entered in favor of the Commissioner and against Glant. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: January 18, 2022                      *s/ Karoline Mehalchick*
                                             **KAROLINE MEHALCHICK**
                                             **Chief United States Magistrate Judge**